# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 14-16V
Filed: October 27, 2014
For Publication

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| CHESLEY GARRETT and DAUN GARRETT, Individually and Representing Their Minor Daughter, L.G., * * * * | |
| Petitioners, * * | Attorneys' fees and costs decision; |
| | Respondent objects to fee award; |
| v. * | Reasonable basis |
| | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, * * * | |
| Respondent. * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Chesley and Daun Garrett, Big Spring, TX, for petitioners (pro se).
Gordon E. Shemin, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On May 15, 2014, in conjunction with the withdrawal of Sean Franks Greenwood, Esq. ("Mr. Greenwood") as attorney of record, petitioners filed Petitioners' Application for Interim Award of Attorneys' Fees and Reimbursement of Costs, requesting that the Court award petitioners $4,561.39 in interim attorneys' fees and costs. The undersigned subsequently issued a decision on July 7, 2014, dismissing petitioners' claim based on their failure to prosecute. Judgment entered on August 8, 2014. The fees and costs award is no longer on an interim basis.

---

[1] Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioners have 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

For the reasons set forth below, the undersigned awards petitioners $4,411.39 for final attorneys' fees and costs.

## PROCEDURAL HISTORY

On January 6, 2014, petitioners filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2006), ("Vaccine Act"), alleging that their daughter, L.G., developed type 1 diabetes as a result of the DTaP, IPV, and hepatitis B vaccinations she received on November 9, 2010. Pet. at 4. Both L.G. and her sister, K.G., were vaccinated on the same day and were diagnosed with diabetes a few months later in March 2011.

On January 30, 2014, the undersigned issued an order stating that no allegation of vaccine-caused type 1 diabetes has succeeded in the Vaccine Program. See Hennessey v. Sec'y of HHS, No. 01-190V, 2009 WL 1709053 (Fed. Cl. Spec. Mstr. May 29, 2009), aff'd, 91 Fed. Cl. 126 (Fed. CI. 2010) (an omnibus proceeding in which now-Chief Special Master Denise Vowell found that vaccines do not cause type 1 diabetes); Meyers v. Sec'y of HHS, No. 04-1771V, 2006 WL 1593947 (Fed. Cl. Spec. Mstr. May 22, 2006) (a decision in which then-Special Master Patricia Campbell-Smith found that vaccines do not cause type 1 diabetes); Baker v. Sec'y of HHS, No. 99-653V, 2003 WL 22416622 (Fed. Cl. Spec. Mstr. Sept. 26, 2003) (an omnibus decision in which the undersigned found that vaccines do not cause type 1 diabetes). The undersigned advised petitioners that presenting the same sort of evidence as the undersigned and others previously considered in other cases would not result in a different outcome.

A telephonic status conference was held on March 7, 2014. Petitioners' counsel requested until May 5, 2014, to locate an expert to offer a different theory of causation than the theories offered in the three cases cited in the undersigned's January 30, 2014, order.

On April 29, 2014, the undersigned issued another order noting a recent decision by Special Master George Hastings, in which he dismissed a case where the petitioner alleged that MMR vaccine caused type 1 diabetes. Crutchfield v. Sec'y of HHS, No. 09-39V, 2014 WL 1665227 (Fed. Cl. Spec. Mstr. Apr. 7, 2014), aff'd, slip. op. (Fed. Cl. Sept. 8, 2014), appeal docketed, No. 15-5010 (Fed. Cir. Oct. 16, 2014). On May 5, 2014, petitioners' counsel filed a status report, in which he stated that petitioners had not found a suitable expert, and he wished to withdraw as counsel.

On May 15, 2014, petitioners' counsel filed a motion to withdraw as attorney of record in this case. With his motion, he provided email addresses and a phone number for his clients. Petitioners' counsel also filed Petitioners' Application for Interim Award of Attorneys' Fees and Reimbursement of Costs on May 15, 2014.

The motion to withdraw was granted on May 16, 2014, and petitioners became *pro se*. In her order granting the motion to withdraw, the undersigned ordered petitioners to contact the undersigned's law clerk to schedule a telephonic status conference. The undersigned's law clerk received no communication from petitioners, and her attempts to contact petitioners were unsuccessful. On June 20, 2014, the undersigned issued an Order to Show Cause, again ordering

petitioners to contact the undersigned's law clerk. This Order was delivered to petitioners via United States Postal Service ("USPS") Certified Mail.

On June 25, 2014, respondent filed a Response to Petitioners' Application for Interim Award of Attorneys' Fees and Costs.  Respondent objected to any award of interim fees and argued that reasonable basis could not be determined because no medical records had been filed in the case.

The undersigned issued a dismissal decision on July 7, 2014, after petitioners failed to file a response to the Order to Show Cause or to contact the undersigned's law clerk, and judgment entered on August 8, 2014.

In light of respondent's argument that reasonable basis could not be established without a review of the medical records and because the application was no longer on an interim basis, the undersigned's law clerk directed petitioners' former counsel to send the medical records to respondent.  Respondent reviewed the records and filed a supplemental response on September 19, 2014.  In her supplemental response, respondent argues that there is no reasonable basis for the claim in fact, science, or law.  Supp. Resp. at 14–15.

Respondent has filed the medical records received from petitioners' former counsel.  The court has designated these medical records as Exhibits 2–8.  See Order, Oct. 22, 2014.

This matter is now ripe for adjudication.

## FACTUAL HISTORY

Petitioners assert that L.G. received hepatitis B, DTaP, and IPV vaccinations on November 9, 2010.  Ex. 1, at 1.  The records from Leonard's Clinical Services, where L.G. received her vaccinations, show that she received hepatitis B, DTaP, and IPV vaccinations on August 22, 2008.  Med. recs. Ex. 2, at 2.  The Leonard's records do not list any vaccinations given on November 9, 2010.  Id.  The only vaccine record from Leonard's in 2010 was an MMR vaccination on October 7, 2010.  Id.  However, the Texas Immunization Registry vaccination record does note that L.G. received DTaP and IPV vaccinations on November 9, 2010, but not hepatitis B.  Med. recs. Ex. 5, at 1.

L.G. presented to Midland Memorial Hospital Emergency Department on March 24, 2011, for hyperglycemia.  Med. recs. Ex. 7, at 2.  The history states that while her sister was hospitalized for juvenile diabetes, their father checked L.G.'s glucose level and found it to be 409 and then 366 upon repeat testing.  Id.  When tested at the hospital, L.G.'s glucose level was 271, above the normal range of 70–100.  Id. at 8.  She was given sodium chloride 0.9% via IV, diagnosed with hyperglycemia, and discharged.  Id. at 6, 9–10.

L.G. visited the University Medical Center Emergency Center on April 14, 2011, again for hyperglycemia.  Med. recs. Ex. 3, at 1.  During her two-day hospitalization, L.G.'s blood work showed elevated glucose up to 277, and her urinalysis showed 500 glucose in her urine but

no ketones.  Id. at 14.  She was diagnosed with diabetes mellitus type 1 and prescribed Lantus. Id. at 13–14.  She was discharged on April 16, 2011.  Id. at 75.

L.G. was later diagnosed with acquired hypothyroidism in April 2011, for which she takes low-dose thyroid replacement.  Med. recs. Ex. 8, at 73, 99.

According to her endocrinologist, Dr. Alan Rice, both of L.G.'s grandmothers have diabetes mellitus, and there are individuals with juvenile diabetes on the paternal side of the family and with type 2 diabetes mellitus on the maternal side of the family.  Med. recs. Ex. 8, at 90.  She also has cousins on both sides of her family with thyroid problems.  Id.  Mrs. Garrett states that this history is incorrect.  In her affidavit, she states they told the nurse that they had Type 2 diabetes in the family and a distant history of type 1 diabetes.  Ex. 1, at 2, n.2.  She states that only her husband's uncle and his distant cousin have type 1 diabetes.  Id.  She states that her husband's mother does not have diabetes, as was reported in the history.  Id.

## DISCUSSION

### I.    Entitlement to Fees and Costs Under the Vaccine Act

Under the Vaccine Act, a special master or the Court of Federal Claims may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard.  Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152 at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).  A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred.  Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  Petitioners are "entitled to a presumption of good faith."  Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Program rules.  It has been determined to be an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of HHS, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011).  In determining reasonable basis, the court looks "'not at the likelihood of success [of a claim] but more to the feasibility of the claim.'"  Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of HHS, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)).  Factors to be considered include factual basis, medical support, jurisdictional issues, and the circumstances under which a petition is filed.  Turner, 2007 WL 4410030, at *6–*9.  Traditionally, special masters have been "quite generous" in finding reasonable basis.  Turpin v. Sec'y of HHS, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); see also Austin v. Sec'y of HHS, No. 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("The policy behind the Vaccine Act's extraordinarily generous provisions authorizing attorney fees and costs in unsuccessful cases—ensuring that litigants have ready access to competent representation— militates in favor of a lenient approach to reasonable basis.").  Special masters have found reasonable basis to file a claim absent medical records or opinions supporting vaccine causation. See Austin, 2013 WL 659574, at *8; Hamrick, 2007 WL 4793152.

### a. Good Faith & Reasonable Basis

Petitioners are entitled to a presumption of good faith, and respondent does not contest that the petition was filed in good faith.  There is no evidence that this petition was brought in bad faith; therefore, the undersigned finds that the good faith requirement is present.

In contrast, respondent does contest that this petition is supported by a reasonable basis.  Respondent argues that there is no factual reasonable basis for this petition, as there are no medical records supportive of vaccine causation.  Supp. Resp. at 14.  She argues that there is no scientific basis for the claim, as the Institute of Medicine has rejected an association between DTaP or hepatitis vaccines and type 1 diabetes.  Id. at 14.  Respondent further argues that there is no legal basis for the petition, as no allegations of vaccine-caused type 1 diabetes have succeeded in the Vaccine Program.  Id. at 15.

Petitioners assert that the petition is supported by a reasonable basis because both Garrett daughters received the same vaccines at the same time and were diagnosed with type 1 diabetes around the same time, the Garretts had minimal family history of type 1 diabetes (though this assertion is not supported by the medical records), and neither daughter exhibited symptoms of diabetes prior to their vaccinations. Fee App. at 2.  Petitioners also assert that the time period between the vaccination and diagnosis was indicative of causation.  Id.  Additionally, petitioners assert that there is a considerable body of research suggesting that vaccines can cause diabetes (although petitioners' counsel later discovered all of this research originated from a single expert, who has been discredited in previous Vaccine Program cases).  Id.

Petitioners have a vaccination record showing that L.G. received DTaP and IPV vaccinations, vaccines covered in the Vaccine Injury Table, on November 9, 2010.  Med. recs. Ex. 5, at 1; 42 C.F.R. § 100.3.  There is also support in the medical records that she suffered her alleged injuries: diabetes and an enlarged thyroid.  See Med. recs. Ex. 3; Ex. 5.

Respondent is correct that the medical records do not contain any statements supporting vaccine causation.  The records detailing L.G.'s diabetes diagnosis and treatment do not mention her hepatitis B, DTaP, or IPV vaccinations.  However, many claims in the Vaccine Program succeed or settle without treating doctors' opinions in favor of vaccine causation because petitioners are able to find non-treating doctors to provide expert reports.

While no type 1 diabetes case has succeeded in the Vaccine Program, and there does not appear to be reliable scientific evidence that a vaccine can cause type 1 diabetes at this time, the undersigned is not willing to rule that no type 1 diabetes case could ever succeed in the Vaccine Program. Science is constantly evolving, and new medical breakthroughs occur frequently. Congress recognized this when it created the Vaccine Program, as seen by the establishment of an Advisory Commission on Childhood Vaccines, whose responsibilities include recommending revisions to the Vaccine Injury Table.  42 U.S.C. § 300aa-19(f)(2).  In fact, the Vaccine Injury Table has been amended seven times since the Vaccine Program was created, most recently in 2011.  42 C.F.R. § 100.3 (2011).  It is conceivable that a new scientific theory could emerge that causally connects a vaccine with type 1 diabetes.  To rule that no type 1 diabetes case could ever succeed in the Vaccine Program would discourage attorneys from pursuing new scientific

theories that could ultimately prove successful, contrary to the purpose of the Vaccine Act.  See Saunders v. Sec'y of HHS, 25 F.3d 1031, 1035 (Fed. Cir. 1994) (The purpose of the fee-shifting provision is to "ensure that vaccine-injury claimants will have readily available a competent bar to prosecute their claims under the Act.")

Both of petitioners' daughters were diagnosed with type 1 diabetes several months after receiving vaccinations on the same date.  The undersigned finds that the facts demonstrated in the medical records gave petitioners a reasonable basis to file the petition and attempt to find an expert to support their allegations.  A case may have a reasonable basis initially, but lose that reasonable basis as the case proceeds.  See Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992) (affirming the special master's award of attorneys' fees and costs up to the point of the evidentiary hearing, when the special master determined counsel should have known the evidence was legally insufficient).  Once petitioners' counsel discovered that he could not obtain reliable scientific evidence in favor of vaccine causation and that there was no longer a reasonable basis to proceed, he filed a motion to withdraw in a timely fashion.  An award of reasonable attorneys' fees and costs is merited.

## II.    Reasonableness of Requested Attorneys' Fees and Costs

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  Avera v. Sec'y of HHS, 515 F.3d 1343, 1347 (Fed. Cir. 2008).  The lodestar approach involves a two-step process.  First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347–48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  Id. at 1348.

The lodestar approach requires that the reasonable hourly rate be multiplied by the number of hours "reasonably expended on the litigation."  Avera, 515 F.3d at 1347–48 (quotation and citation omitted).  Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task.  See Savin v. Sec'y of HHS, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008).  Counsel must not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."  Saxton v. Sec'y of HHS, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done."  Id.  Furthermore, the special master may reduce fees sua sponte, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond.  See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009).

Attorneys' costs must be reasonable as well.  See Perreira, 27 Fed. Cl. at 34 ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both.  Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs.").

Petitioners request fees and costs for Sean Greenwood of Houston, Texas. They filed invoices for fees dating from July 2013 through May 2014, seeking reimbursement for attorneys' fees in the amount of $3,870.00. While petitioners state in their application that Mr. Greenwood billed at a rate of $300 per hour, many of Mr. Greenwood's 2013 billing entries are billed at a rate of $350 per hour. An invoice for costs is also included with petitioners' application. Petitioners seek $691.39 for attorneys' costs incurred from October 2013 to January 2014.

### a. Mr. Greenwood's Hourly Rate

A reasonable hourly rate is "'the prevailing market rate,' defined as the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Avera, 515 F.3d at 1348 (quoting Blum, 465 U.S. at 888). In Avera, the Federal Circuit found that in Vaccine Act cases, a court should use the forum rate, i.e., the District of Columbia rate, in determining an award of attorneys' fees. Id. at 1349. At the same time, the court adopted the Davis County exception to prevent windfalls to attorneys who work in less expensive legal markets. Id. (citing Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). Under the Davis County exception, in cases where the bulk of the work is completed outside the District of Columbia and there is a "*very significant* difference" between the forum hourly rate and the local hourly rate, the court should calculate an award based on local hourly rates. Id. (finding the market rate in Cheyenne, Wyoming to be very significantly lower than the market rate in Washington, DC). The Davis County exception does not apply when the forum rates are lower than an attorney's local rate. Id.; Rodriguez v. Sec'y of HHS, 2009 WL 2568468, at *19 (Fed. Cl. Spec. Mstr. July 27, 2009).

Petitioners submit that their counsel, Mr. Greenwood, should be compensated at an hourly rate of $300 per hour. Fee App. at 4. Respondent does not contest Mr. Greenwood's hourly rate.

The undersigned finds that petitioners' counsel is entitled to the forum rate in Washington, DC, rather than the local geographic hourly rate in Houston, Texas. Avera, 515 F.3d at 1349. Neither party has presented evidence that the Houston geographic rate is "very significantly lower" than the forum rate. Id.

After reviewing Mr. Greenwood's years of experience, reputation, and skill, and comparing this with other attorneys with comparable factors, the undersigned finds that an hourly rate of $300 for 2013 to 2014 is reasonable. This rate is comparable to the forum rates the undersigned found in 2011. Carcamo v. Sec'y of HHS, 2011 WL 2413345 (Fed. Cl. Spec. Mstr. May 20, 2011) (finding that a forum rate for attorneys in 2006 to 2011 was $275–$360 per hour).

Petitioners note in their application that their counsel's normal rate is $350 per hour, but he reduced his rate to $300 per hour for vaccine cases after opposing counsel objected to the $350 rate. Fee App. at 4, n.3. However, some of the billing entries in the application are nevertheless billed at a $350 rate. See Fee App., Ex. 1, at 1–2 (all of the 2013 billings except for the billings on June 26, 2013, June 27, 2013, and September 26, 2013 are billed at a $350 rate). Based on the footnote in petitioners' application as well as the fact that their computation of total

fees reflects a $300 rate rather than the $350 rate billed on the invoice, the undersigned assumes that the entries billed at a $350 rate are the result of petitioners' counsel's oversight in changing his rate throughout his billing records. Accordingly, the undersigned reduces Mr. Greenwood's hourly rate to $300 where it was, apparently erroneously, billed as $350.

### b.  Reasonable Hours Expended

Petitioners request compensation for 12.9 hours of work expended by Mr. Greenwood. Respondent does not contest the amount of hours expended. After reviewing the invoice, the undersigned finds one of the billed items to be unreasonable.

On February 25, 2014, petitioners' counsel billed 0.5 hours for a "[c]onference w/ parents of children w/ potential vaccine injury to explain program and benefits of same." Fee App., Ex. 1, at 3. This billing entry appears to relate to another case altogether. Since this conference took place over a month after the Garrett petitions were filed, the undersigned assumes that these parents were not the Garretts. The undersigned accordingly reduces the hours requested by 0.5.

### c.  Reasonable Costs Expended

Petitioners request $691.39 in costs. Respondent does not object to any of petitioners' costs. After reviewing the invoice, the undersigned finds the costs requested to be reasonable.

### CONCLUSION

The undersigned finds an award of attorneys' fees and costs appropriate. In sum, the undersigned awards to petitioners the following amount for attorneys' fees and costs:

**Attorneys' fees for Sean Greenwood:**
Requested:    12.9 hours at $300 per hour = $3.870.00
Awarded:      12.4 hours at $300 per hour = **$3,720.00**

**Costs:**
Requested:    $691.39
Awarded:      **$691.39**

**Total fees and costs:**
Requested:    $4,561.39
Awarded:      **$4,411.39**

The undersigned finds this amount to be reasonable and awards **$4,411.39**, representing reimbursement for attorneys' fees and costs. The award shall be in the form of a check made payable jointly to petitioners and Gauthier, Houghtaling, and Williams in the amount of **$4,411.39.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[2]


**IT IS SO ORDERED.**


Dated: <u>October 27, 2014</u>

                                                 _____

                                                     Laura D. Millman
                                                    Special Master

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.